## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FRANCINE PAVONE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 20-1932 |
| | ) | Magistrate Judge Maureen P. Kelly |
| v. | ) | |
| | ) | Re: ECF No. 25 |
| REDSTONE TWP SEWER | ) | |
| AUTHORITY, GEORGE MATIS, JAMES | ) | |
| BASHOUR, LARRY WILLIAMS, | ) | |
| REDSTONE TWP, REDSTONE TWP | ) | |
| BOARD OF SUPERVISORS, and RICHARD | ) | |
| BROSKY, | ) | |
| | ) | |
| Defendants. | ) | |

### <u>MEMORANDUM OPINION</u>

Plaintiff Francine Pavone ("Plaintiff"), a former employee of the Redstone Township Sewer Authority, filed this action arising out of allegations that she was constructively discharged from her employment. Plaintiff claims that Defendants violated her First and Fourteenth Amendment rights, violated the Pennsylvania Whistleblower statute, and engaged in tortious conduct.

Presently before the Court is a Motion to Dismiss filed by Defendants Redstone Township Sewer Authority ("RTSA"), George Matis ("Matis"), James Bashour ("Bashour"), Larry Williams ("Williams"), Redstone Township, Redstone Township Board of Supervisors, and Richard Brosky ("Brosky") (collectively, "Defendants"). ECF No. 25. For the reasons that follow, the Motion to Dismiss is granted in part and denied in part.[1]

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties voluntarily consented to having a United States Magistrate Judge conduct all proceedings in this case, including the entry of a final judgment. ECF Nos. 19 and 20.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff filed her original Complaint on December 11, 2020.  ECF No. 1.  She then filed a First Amended Complaint on March 19, 2021.  ECF No. 21.

A.  **Factual Allegations**

In her First Amended Complaint, Plaintiff alleges that from 2010 until late April or early May 2019, she was employed by the RTSA as an office manager.  Id. ¶ 19.  She was a full-time employee with medical benefits, who never received any progressive discipline or warnings for alleged misconduct or poor performance.  Id. ¶¶ 20-21.

Defendants Williams, Bashour, Matis and Brosky are close friends, and they all held positions during the relevant time on the Redstone Township Board of Supervisors and/or the RTSA.  Id. ¶¶ 9-15, 24.

Williams was a Redstone Township Supervisor.  Id. ¶ 11.  At some point, Plaintiff sent Williams a late bill for sewer services.  Id. ¶ 25.  Williams was "extremely angry" about this bill, and he kept it on his desk until his retirement in 2020.  Id. ¶¶ 25-26.  On May 23, 2018, he submitted a right-to-know request for Plaintiff's employment information.  Id. ¶ 33.

Matis ran in, and ultimately won, an election for Redstone Township Supervisor in 2017.  Id. ¶¶ 27, 29.  When Plaintiff told Bashour that she did not support Matis as a candidate, Bashour cursed at her.  Id. ¶ 28.  Later, after Bashour became an RTSA board member in January 2018, he refused to communicate directly with Plaintiff.  Id. ¶ 32.  Bashour threw paperwork across the desk at her during meetings.  Id.

In addition to being a township supervisor, Matis was appointed to the RTSA board in January 2019.  Id. ¶ 34.  After his appointment, Matis obtained the login information for the RTSA accounting software and "would constantly monitor the Plaintiff's work."  Id. ¶ 37.

2

Plaintiff directly criticized Matis on two occasions.  First, she confronted Matis about his falsely reporting that the apartment above the RTSA only was used for storage, in a fraudulent effort to lower the RTSA's real estate tax.  Id. ¶¶ 35-36.  Second, Plaintiff criticized Matis for performing RTSA business while he was on Redstone Township "time," which meant he was being compensated by Redstone Township for performing RTSA work.  Id. ¶¶ 38-40.

Plaintiff claims that, by March 2019, Bashour, Williams, Matis and Brosky "were engaging in a joint and concerted effort to destroy the Plaintiff's career with the RTSA."  Id. ¶ 43.  From January 2019 until after May 2019, Bashour and Matis spread false rumors that Plaintiff mishandled the RTSA books and stole money from RTSA.  Id. ¶ 42.

On March 15, 2019, Matis met with Plaintiff.  Id. ¶ 44.  Implying that she had engaged in misconduct, Matis told her that Defendants would contact the Attorney General's office about her, unless she resigned.  Id. ¶ 45.  Matis said she did not know "what was in store for her" if she stayed, and that she could not handle the pressure, which was "not good for [her] health."  Id.  If she agreed to resign, Matis said he would allow her to draw unemployment.  Id.  If she did not resign, however, Plaintiff would be demoted to a part-time clerk role and stripped of all employee benefits.  Id.

Plaintiff responded that this was "a witch hunt and nothing but a vendetta," to which Matis replied, "yes, you're, right."  Id. ¶ 46.  Plaintiff said she was innocent and would not resign.  Id. ¶ 47.

Three days later, during a regularly scheduled RTSA meeting, Plaintiff's sister told Bashour that if he had a personal vendetta against anyone that he should not be on the board and should resign.  Id. ¶ 48.

On March 25, 2019, the RTSA and Redstone Township Board of Supervisors held a joint special meeting, which was open to the public.  Id. ¶¶ 51, 54.  Bashour, Williams, Matis and Brosky organized this meeting in order to take adverse employment action against Plaintiff.  Id. ¶¶ 49-50. During this meeting, Bashour and Matis publicly criticized Plaintiff's job performance, made "false and stigmatizing" statements regarding her work, and implied that she had committed unlawful acts.  Id. ¶¶ 55-56.

At Brosky's motion, the meeting then shifted to "executive session."  Id. ¶¶ 57-58.  A motion was passed to reduce Plaintiff's position to a part-time role, effective April 23, 2019, and to eliminate her health benefits as of June 2019.  Id. ¶¶ 59-60.  Williams participated in the executive session, despite the fact that he was not an RTSA board member.  Id. ¶ 58.

As a result of these events, Plaintiff suffered severe anxiety and stress, which resulted in headaches, stomach aches, vomiting and loss of sleep.  Id. ¶¶ 61-63.  Plaintiff sought medical attention for her symptoms.  Id. ¶ 63.  Her doctor prescribed anti-anxiety medication and recommended that she take a break from work.  Id. ¶ 64.  On April 10, 2019, Plaintiff emailed Matis to notify him of her doctor's recommendation, and that she planned to take a vacation from April 12, 2019 through May 6, 2019.  Id. ¶ 65.

On April 16, 2019, Plaintiff submitted a right-to-know request for the minutes from the March 25, 2019 meeting, and the Redstone Township Board of Supervisors' and employees' W-2s, health benefits and mileage information.  Id. ¶ 66.  In response, Williams called Plaintiff and screamed at her.  Id. ¶ 67.  He called her stupid and demanded to know why she wanted this information.  Id.

Despite her new part-time status, Bashour, Matis and Brosky approved a revised job description for Plaintiff based upon a full-time position at the Pittsburgh Water and Sewer

Authority.  Id. ¶ 69.  Matis notified Plaintiff of her revised job description by email on April 23, 2019.  Id. ¶ 68.  In multiple emails, including this one, Matis also acknowledged Plaintiff's work-related anxiety.  Id. ¶¶ 68, 70.

Plaintiff claims she was constructively discharged, and she never returned to work following her vacation.  Id. ¶¶ 65, 71.  In May 2019, Plaintiff requested that personal items she brought to the office be returned to her.  Id. ¶ 73.  Matis, Bashour and Brosky returned some, but not all, of Plaintiff's things.  Id. ¶ 74.

### B.  Legal Claims

Plaintiff asserts the following claims: Count I: First Amendment retaliation; Count II: Violation of the Pennsylvania Whistleblower Law; Count III: Procedural Due Process – Property Interest in Employment; Count IV: Stigma Plus Procedural Due Process; Count V: Procedural Due Process for Deprivation of Personal Property; Count VI: Intentional Infliction of Emotional Distress; Count VII: Municipal Liability: Count VIII: Tortious Interference; and Count IX: Conversion.

Plaintiff asserts Counts I, II, III and IV against all Defendants.  Count V is against Matis, Bashour, Brosky and the RTSA.  Counts VI and VIII are against Matis, Bashour, Brosky and Williams.  Count VII is against RTSA, Redstone Township Board of Supervisors and Redstone Township.  Finally, Count IX is against Matis, Bashour and Brosky.

### C.  Motion to Dismiss

Defendants filed the instant Motion to Dismiss and Brief in Support on April 23 and 24, 2021.  ECF Nos. 25 and 26.  Plaintiff filed her Brief in Opposition on May 28, 2021.  ECF No. 30.  Defendants filed a Reply.  ECF No. 31.

The Motion to Dismiss is now ripe for consideration.

5

## II.    LEGAL STANDARD

In assessing the sufficiency of a complaint pursuant to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all material allegations in the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff.  Odd v. Malone, 538 F.3d 202, 205 (3d Cir. 2008).  The Court, however, need not accept bald assertions or inferences drawn by the plaintiff if they are unsupported by the facts set forth in the complaint.  See Cal. Pub. Employees' Retirement Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)).  Nor must the Court accept legal conclusions set forth as factual allegations.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Id. (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).  Indeed, the United States Supreme Court has held that a complaint is properly dismissed under Fed. R. Civ. P. 12(b)(6) where it does not allege "enough facts to state a claim to relief that is plausible on its face," id. at 570, or where the factual content does not allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see also Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (finding that, under Twombly, "labels, conclusions, and a formulaic recitation of the elements of a cause of action" do not suffice but, rather, the complaint "must allege facts suggestive of [the proscribed] conduct" and that are sufficient "to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s] of his claim").

### III.   DISCUSSION

#### A.  First Amendment Retaliation (Count I)

Plaintiff asserts a First Amendment retaliation claim against all Defendants in Count I.  "In order to plead a retaliation claim under the First Amendment, a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and retaliatory action."  Emigh v. Steffee, 442 F. App'x 660, 664 (3d Cir. 2011) (quoting Thomas v. Independence Twp., 463 F.3d 285, 296 (3d Cir. 2006)) (internal quotations omitted).

Generally, a public employee's speech is protected when (1) the employee spoke as a citizen; (2) the statement involved a matter of public concern; and (3) the government employer did not have an adequate justification for treating the employee differently from any other member of the general public as a result of the statement.  Falco v. Zimmer, 767 F. App'x 288, 300 (3d Cir. 2019) (citing Hill v. Borough of Kutztown, 455 F.3d 225, 241-42 (3d Cir. 2006)).   A public employee does not speak "as a citizen" if she makes a statement pursuant to her official duties. Id.  Moreover, "[w]hether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record."  Id. (quoting Rankin v. McPherson, 483 U.S. 378, 384-85 (1987)) (internal quotations omitted).

##### 1.  Protected Conduct

Plaintiff claims she engaged in protected speech on four occasions: (1) telling Bashour in 2017 that she did not support Matis as a political candidate; (2) criticizing Matis for falsely reporting that the upper apartments of the RTSA were being used for storage; (3) also criticizing

Matis for performing RTSA work on Redstone Township "time"; and (4) submitting a "right-to-know" request on April 16, 2019 for the March 25, 2019 special meeting minutes and Redstone Township Supervisors' and employees' W-2s, health benefit and mileage information.  ECF No. 30 at 9. [2]  For ease of reference, the Court refers to these as the first, second, third and fourth statements, respectively.

With respect to the second and third statements, Defendants argue in support of their Motion to Dismiss that Plaintiff did not engage in protected speech when she directly criticized Matis.  ECF No. 26 at 7-9.  Plaintiff spoke pursuant to her official duties as an office manager, they argue, and she did not raise her concerns publicly.  Id.; ECF No. 31 at 1-2.  Based on this, Defendants argue that Plaintiff does not state a First Amendment retaliation claim arising out of this speech.

In response, Plaintiff argues that disclosing officials' malfeasance, as here, is protected speech.  ECF No. 30 at 10.  Although Plaintiff concedes that she arguably spoke pursuant to her official duties regarding Matis lying about the use of the RTSA apartment space, she claims that she criticized Matis about billing his RTSA work to Redstone Township in her capacity as a citizen.  Id.

Upon review, Plaintiff sufficiently pleads that she engaged in protected speech relative to the first, third and fourth statements at issue.  For a public employee's speech to be protected, she must (1) speak in her capacity as a citizen; (2) involving a matter of public concern.  Borough of Duryea v. Guarnieri, 564 U.S. 379, 386 (2011).

---

[2] In her Brief in Opposition, Plaintiff argues that she also pleads a First Amendment retaliation claim based on political retaliation and familial association, referring the Court to paragraph 77 of her Amended Complaint.  ECF No. 30 at 9, 11.  Defendants address Plaintiff's potential claim based on familial association in their Reply.  ECF No. 31 at 4-5.  Because Defendants do not brief these issues in their underlying Motion to Dismiss or Brief in Support, and the Court does not find that Count I should otherwise be dismissed in its entirety, the Court does not address those potential claims here.

Out of the four instances of Plaintiff's alleged protected speech, Defendants only challenge whether Plaintiff confronting Matis qualifies as protected speech. Therefore, it is undisputed that Plaintiff's first and fourth statements are protected speech.

With respect to the second statement, Plaintiff does not plead facts demonstrating that she "spoke as a citizen," so that her speech is protected under the First Amendment. As discussed, "if a public employee's speech is part of [her] ordinary job duties, the employee is acting as a public employee and [her] activity is thus not protected under the First Amendment." Falco, 767 F. App'x at 302; see also id. ("A public employee does not speak 'as a citizen' when [she] makes a statement 'pursuant to [her] official duties.'") (quoting Garcetti v. Ceballos, 547 U.S. 410, 418 (2006)). Because Plaintiff does not dispute that she acted pursuant to her "official duties" as an office manager when she confronted Matis about his false report regarding the use of the RTSA apartment, this does not qualify as protected speech.

With respect to the third statement, however, Plaintiff sufficiently pleads that she engaged in protected speech when criticizing Matis about performing RTSA work on Redstone Township "time." Plaintiff confronted Matis about his misuse of Redstone Township, as opposed to RTSA, payroll funds. Thus, Plaintiff plausibly pleads that she spoke as a "citizen," rather than in her capacity as an RTSA employee.

Assuming Plaintiff acted as a private citizen, whether her speech is protected next turns on whether the activity involved a matter of public concern. As the United States Court of Appeals for the Third Circuit recently summarized:

> Activity involves matters of public concern "when it can 'be fairly considered as relating to any matter of political, social, or other concern to the community,' or when it 'is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public.'" Snyder v. Phelps, 562 U.S. 443, 453, 131 S.Ct. 1207, 179 L.Ed.2d 172 (2011) (citations omitted). By contrast, activity does not involve a matter of public concern when it relates solely to "mundane

employment grievances." Munroe [v. Central Bucks Sch. Dist.,] 805 F.3d [454, 467 (3d Cir. 2015)] (citation omitted). Courts determine whether an employee's speech involves public concern by reference to the speech's "content, form, and context," Lane [v. Franks], 573 U.S. [228, 241 (2014)] (quoting Connick [v. Myers], 461 U.S. [138, 147–48 (1983)], which encompasses "the employee's motivation as well as whether it is important to our system of self-government that the expression take place," Munroe, 805 F.3d at 467 (citations omitted).

Because courts are not to "make a superficial characterization of the speech or activity taken as a whole," they must conduct "a particularized examination of each activity for which the protection of the First Amendment is claimed" to determine whether it involves a matter of public concern, Johnson v. Lincoln Univ. of Commonwealth Sys. of Higher Educ., 776 F.2d 443, 451 (3d Cir. 1985), while taking care not to "'cherry pick' something that may impact the public while ignoring [its] manner and context," Munroe, 805 F.3d at 467 (citation omitted). If, for example, a discrete unit of speech addresses only the employee's own problems and, even if those problems "brush ever so gently against a matter of public concern" by virtue of that employee's public employment, then that speech is merely a "personal grievance." Miller v. Clinton Cty., 544 F.3d 542, 551 (3d Cir. 2008).

Falco, 767 F. App'x at 302-03.

At this stage, Plaintiff also sufficiently pleads that she raised a matter of public concern. Whether Matis was being paid by Redstone Township while not performing township work concerns the potential misuse of Redstone Township taxpayer funds, and thus it is fairly characterized as being of "value and concern to the public." Id. Although Defendants note that Plaintiff only raised her complaint internally, the United States Supreme Court has indicated that this fact, alone, is not dispositive of whether an individual raises a matter of public concern.

That [plaintiff] expressed his views inside his office, rather than publicly, is not dispositive. Employees in some cases may receive First Amendment protection for expressions made at work. See, e.g., Givhan v. Western Line Consol. School Dist., 439 U.S. 410, 414, 99 S.Ct. 693, 58 L.E.2d 619 (1979). Many citizens do much of their talking inside their respective workplaces, and it would not serve the goal of treating public employees like "any member of the general public," Pickering [v. Bd. of Ed. of Twp. High Sch., 391 U.S. 563, 573 (1968)], to hold that all speech within the office is automatically exposed to restriction.

Garcetti, 547 U.S. at 420-21.

For these reasons, Plaintiff sufficiently pleads that she engaged in protected speech relative to the first, third and fourth statements above. Because she does not plead that she engaged in protected speech as to the second statement, however, the Motion to Dismiss is granted only to the extent Plaintiff's claim arises out the second statement.

### 2. Connection between Protected Activity and Adverse Action

Defendants also argue that Count I should be dismissed because Plaintiff cannot show that any of her alleged protected speech was a substantial or motivating factor for the adverse employment action alleged. ECF No. 26 at 10-12. Defendants argue that the first, second and third statements occurred significantly before Plaintiff was constructively discharged, and there are no other facts that imply any causal connection between her speech and constructive discharge. Id. at 10-11. As to the fourth statement, her right-to-know request, Defendants argue this did not occur until after Plaintiff was demoted and left for vacation (from which she did not return), and it therefore could not have been a substantial or motivating factor in conduct leading to her constructive discharge. Id. at 11-12.

In response, Plaintiff argues that where a reasonable inference can be granted that the protected speech was a factor in the adverse action against an individual, the question of whether the speech was, in fact, a motivating factor is a question for the jury. ECF No. 30 at 13 (citing Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782 (3d Cir. 2000)). Based on her allegations, she argues, within four months of Matis being appointed to the RTSA board, Defendants made her working conditions so unbearable that she was forced to resign. Id. at 15.

Upon review, Plaintiff's first statement occurred during the election year of 2017. Plaintiff pleads that, shortly after, beginning in January 2018, Defendants engaged in a pattern of hostile conduct that continued over a period of time until she was ultimately forced to resign in or about

May 2019.  At this preliminary stage, Plaintiff plausibly pleads that her alleged protected speech was a substantial or motivating factor for the adverse employment action alleged.  Therefore, the Motion to Dismiss is denied on this basis.

Based on the foregoing, the Motion to Dismiss is granted in part and denied in part as to Count I.  Count I is dismissed to the extent Plaintiff's claim arises out of her confronting Matis about his falsely reporting on the use of the RTSA apartment.  The Motion to Dismiss is otherwise denied as to Count I.

### B. Pennsylvania Whistleblower Law (Count II)

Defendants argue that Plaintiff's Pennsylvania's Whistleblower Law claim is barred by the 180-day statute of limitations.  ECF No. 26 at 12.  In response, Plaintiff concedes that this claim is time barred.  ECF No. 30 at 15.  Accordingly, the Motion to Dismiss is granted as to Count II.

### C. Procedural Due Process – Property Interest in Employment (Count III)

Defendants argue that Count III should be dismissed because Plaintiff does not have a property interest in her employment.  ECF No. 26 at 13-15.  Plaintiff has withdrawn her claim in response.  ECF No. 30 at 15.  Therefore, the Motion to Dismiss is granted as to Count III.

### D. "Stigma Plus" Procedural Due Process (Count IV)

Defendants argue that Count IV should be dismissed because (1) Plaintiff does not plausibly allege any publicly-made stigmatizing statement; and (2) she also does not allege any stigmatizing statement occurred in the course of her constructive discharge, as required, given that the statements at issue occurred weeks or months before she left her employment.  ECF No. 26 at 18-19.

In response, Plaintiff contends that she sufficiently states a claim based upon her allegations.  ECF No. 30 at 16-17.  With respect to the "stigma" element, she refers the Court to

allegations that Bashour and Matis spread false rumors regarding her mishandling of the RTSA books and unlawfully taking money from the RTSA between January 2019 and May 2019, and their statements made during the March 25, 2019 joint special meeting.  Id. at 17.  Plaintiff also argues that her constructive discharge satisfies the "plus" prong of this claim.  Id.

The United States Supreme Court has held that "an individual has a protectable interest in reputation."  Hill v. Borough of Kutztown, 455 F.3d 225, 235 (3d Cir. 2006) (citing Wisconsin v. Constantineau, 400 U.S. 433 (1971)).  But the Due Process Clause does not protect reputation, alone.  "Rather, to make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation *plus* deprivation of some additional right or interest."  Id. at 236.  This is called the "stigma-plus" test.  Id.

> In the public employment context, the "stigma-plus" test has been applied to mean that when an employer "creates and disseminates a false and defamatory impression about the employee in connection with his termination," it deprives the employee of a protected liberty interest.  Codd v. Velger, 429 U.S. 624, 628, 97 S. Ct. 882, 51 L.Ed.2d 92 (1977).  The creation and dissemination of a false and defamatory impression is the "stigma," and the termination is the "plus."  When such a deprivation occurs, the employee is entitled to a name-clearing hearing.

Id.

"To satisfy the 'stigma' prong of the test, it must be alleged that the purportedly stigmatizing statement(s) (1) were made publicly, and (2) were false."  Id. (internal citations omitted).  As for the "plus" prong, the United States Court of Appeals for the Third Circuit has held that an employee who is defamed in the course of being terminated or constructively discharged satisfies this requirement.  Id. at 238.

Upon review, Plaintiff states a claim in Count IV against Matis and Bashour.  Plaintiff sufficiently pleads the stigma prong.  She claims these Defendants spread false rumors about her from January 2019 through after May 2019 that she mishandled the RTSA books and unlawfully

took money, and that they publicly and falsely implied she committed unlawful acts at the March 2019 joint special meeting.  Thus, Plaintiff has claimed Matis and Bashour publicly made false, stigmatizing statements.  Plaintiff also satisfies the "plus" prong relative to Matis and Bashour, based upon her allegations that she was constructively discharged, in part, as a result of these Defendants' false statements.

As for Defendants other than Matis and Bashour, however, Plaintiff does not identify any purportedly stigmatizing statements made by those Defendants.  Therefore, the Court grants the Motion to Dismiss as to Count IV for all Defendants, except Matis and Bashour, with leave to amend her Complaint as appropriate.

### E.  Procedural Due Process – Deprivation of Property (Count V)

Defendants argue that Count V should be dismissed because "[a]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause [. . .] if a meaningful post deprivation remedy for the loss is available."  ECF No. 26 at 16 (quoting Shakur v. Coelho, 421 F. App'x 132, 135 (3d Cir. 2011)).  Because Plaintiff can pursue a tort claim, they argue, she has a meaningful remedy and cannot state a constitutional claim for her loss of property.  Id. at 17.

In response, Plaintiff argues that the refusal to return her property was not an "unauthorized deprivation," because it was the action of the RTSA as authorized by a majority of its board.  ECF No. 30 at 16.

Upon review, it is premature for the Court to reach a conclusion on this issue.  Although Defendants argue that Plaintiff can pursue alternate relief in the form of her tort claims, they also contend that any such claims are barred because Defendants have high public official immunity.  As discussed below, the Court finds there are questions of fact that preclude it from determining

whether such immunity applies at the motion to dismiss.   Therefore, the Motion to Dismiss is denied on this basis.

### F.  Tort Claims (Counts VI, VIII and IX)

#### 1.  Intentional Infliction of Emotional Distress (Count VI)

Defendants argue that Plaintiff's claim for intentional infliction of emotional distress ("IIED"), Count VI, must be dismissed.  ECF No. 31 at 20.  In order to be actionable, Defendants argue that the alleged conduct must be outrageous, extreme and totally indecent, atrocious and utterly intolerable, but Plaintiff does not plead any such allegations in this case.  Id. (citing Ghrist v. CBS Broad., Inc., 40 F. Supp. 3d 623, 630 (W.D. Pa. 2014)).

In response, Plaintiff asserts that her allegations of Defendants using their positions of governmental authority to engage in a course of harassment against a 72-year old widow, which caused stress and anxiety so extreme that her doctor prescribed medication and recommended that she take a leave from work, constitutes sufficiently intentional, outrageous or extreme conduct to state an IIED claim.  ECF No. 30 at 19.

To state a plausible IIED claim, "plaintiff must allege sufficient facts demonstrating that (1) the defendant's conduct was extreme and outrageous; (2) the defendant's conduct caused the plaintiff severe emotional distress; and (3) the defendant acted intending to cause that person such distress or with knowledge that such distress was substantially certain to occur."  Ghrist, 40 F. Supp. 3d at 630 (citing Brown v. Muhlenberg Twp., 269 F.3d 205, 217 (3d Cir. 2001)).  Liability is only imposed "where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  Reedy v. Evanson, 615 F.3d 197, 231-32 (3d Cir. 2010) (quoting Field v. Phila. Elec. Co., 565 A.2d 1170, 1184 (Pa. Super. Ct. 1989)).  In addition, plaintiff

must allege that she "suffer[ed] some type of resulting physical harm due to the defendant's outrageous conduct." Id. at 231.

Upon review, Plaintiff has sufficiently pled an IIED claim at this initial stage of the case. As such, Plaintiff's IIED claim should not be dismissed. Although Defendants refer the Court to the relevant standard for stating an IIED claim, they do not substantively brief why Plaintiff's allegations do not satisfy this standard, as it has been applied by courts. Accordingly, the Motion to Dismiss is denied as to Count VI.

### 2. Immunity (Counts VI, VIII and IX)

#### a. Pennsylvania Political Subdivision Tort Claims Act

Defendants raise two defenses to Plaintiff's tort claims in Counts VI, VIII and IX based on immunity. First, Defendants assert that all of Plaintiff's tort claims are barred by the Pennsylvania Political Subdivision Tort Claims Act ("PSTCA"), 42 Pa.C.S. § 8541, *et seq.* ECF No. 26 at 20. Defendants qualify for immunity under the PSTCA, they argue, because they are local government agencies or employees thereof, and Plaintiff's claims do not fall under any of the PSTCA's enumerated exceptions to governmental immunity. Id. Based on this, Defendants argue that the Court should dismiss Plaintiff's tort claims against Redstone Township and its Board of Supervisors, the RTSA, and "all of the individual Defendants in their official capacities." Id.

In response, Plaintiff agrees to waive any tort claims against RTSA, Redstone Township, the Redstone Township Board of Supervisors, and the individual Defendants in their official capacities. ECF No. 30 at 18. Plaintiff asserts that Defendants do not raise any argument for dismissing individual Defendants in their individual capacities, and she intends to proceed with those claims. Id.

In their Reply, Defendants argue they would not have had the authority to affect Plaintiff's employment status in anything other than their "official capacities," and therefore Plaintiff's waiver "is dispositive of Plaintiff's [tort] claims arising out of the alleged employment actions." ECF No. 31 at 5.

The PSTCA, 42 Pa.C.S. § 8541, *et seq.* "grants broad immunity from tort suits to local agencies and their employees." Cooper v. City of Chester, 810 F. Supp. 618, 625 (E.D. Pa. 1992). Here, Plaintiff pleads tort claims in Counts VI (Intentional Infliction of Emotional Distress), VIII (Tortious Interference) and IX (Conversion). Although Defendants move to dismiss, and Plaintiff agrees to waive, her tort claims against Redstone Township, the Redstone Township Board of Supervisors, and the RTSA, she does not assert Counts VI, VIII and IX against those Defendants. ECF No. 21 at 20-21, 24-25.[3]

In her Amended Complaint, Plaintiff does not specify whether she is bringing her tort claims against the Matis, Brosky, Bashour and Brosky in their official and/or individual capacities. In a suit against a government official in his official capacity, "the real party in interest . . . is the governmental entity and not the named official." Hafer v. Melo, 502 U.S. 21, 25 (1991). As to the individual Defendants, the parties agree that Plaintiff's tort claims should be dismissed under the PSTCA to the extent, if any, they are asserted against the individual Defendants in their official capacities. Thus, the Motion to Dismiss is granted as to any tort claims brought against Matis, Brosky, Bashour and Williams in their official capacities.

---

[3] Plaintiff includes a claim for "municipal liability" in Count VII against Defendants RTSA, Redstone Township, and the Redstone Township Board of Supervisors, but she limits this claim to Plaintiff's alleged deprivation of constitutional rights. ECF No. 21 ¶¶ 117-124. Thus, she does not assert tort claims against those Defendants in Count VII.

17

Regarding any tort claims against the individual Defendants in their individual capacities, however, Plaintiff's claims may proceed.  Defendants make no argument related to individual-capacity claims in support of their Motion to Dismiss.[4]  Further, claims against named defendants in their individual capacities are not subject to statutory immunity for the intentional torts alleged by Plaintiff.  42 Pa.C.S. § 8550; see also Palmer v. Bartosh, 959 A.2d 508, 512 (Pa. Commw. Ct. 2008); Verde v. City of Phila., 862 F. Supp. 1329, 1336–37 (E.D. Pa. 1994).

Accordingly, the Motion to Dismiss is granted as to Counts VI, VIII and IX, only to the extent those claims are asserted against Matis, Brosky, Bashour and Williams in their official capacities.  Plaintiff may proceed against those Defendants in their individual capacities relative to these claims.

### b.  High Public Official Immunity

Defendants also argue that Plaintiff's tort claims must be dismissed because they have high public official immunity for intentional tort claims.  ECF No. 26 at 21.  Defendants argue that township supervisors are entitled to this immunity, and that the same conclusion should apply for RTSA board members, given they are the decisionmakers for the RTSA.  Id.

---

[4] It is unclear to the Court whether Defendants are arguing that Plaintiff is only proceeding against the individual Defendants in their official capacities, and therefore it is not necessary to address individual-capacity claims.  In the subheading to this argument in the Brief in Support of the Motion to Dismiss, Defendants assert that all of Plaintiff's tort claims are barred by the PSTCA; however, they only specifically request that the Court dismiss claims against the individual Defendants in their official capacities in their substantive argument.  ECF No. 26 at 20.  To the extent Defendants are suggesting that all of Plaintiff's tort claims are barred because she only proceeds against the individual Defendants in their official capacities, they fail to support this conclusion.  As discussed, Plaintiff does not plead or claim in her Brief in Opposition that she is only pursuing these Defendants in their official capacities, and Defendants do not brief why the Court should construe her claims as such.  In their Reply, Defendants argue that the individual Defendants would not have had the authority to affect Plaintiff's employment status unless they acted in their official capacities; however, they do not demonstrate that any or all of Plaintiff's tort claims solely arise out of Defendants' actions that affected her employment status.  Plaintiff's conversion claim, for example, relates to conduct that occurred after Plaintiff left her position.

In response, Plaintiff concedes that Matis and Williams would be entitled to high public official immunity for "all statements made and acts taken in the course of their official duties as township supervisors." ECF No. 30 at 20. However, Plaintiff argues that Williams did not act within the scope of his official duties at the March 25, 2019 joint special meeting regarding Plaintiff's employment. As to Bashour, Matis and Brosky in their capacities as RTSA board members, she argues that it is unclear whether those individuals are entitled to high public official immunity based on the present record, and it is premature to dismiss Plaintiff's claims at this stage. Id. at 20-21.

Under Pennsylvania law, "high public official immunity is a long-standing category of common law immunity that acts as an absolute bar to protect high public officials from lawsuits arising out of actions taken in the course of their official duties and within the scope of their authority." Caristo v. Blairsville-Saltsburg Sch. Dist., 370 F. Supp. 3d 554, 561 (W.D. Pa. 2019) (quoting Doe v. Franklin Cnty., 174 A.3d 593, 603 (Pa. 2017)). This immunity applies if "(1) the individual is determined to be a high public official, and (2) the statements made or actions taken were in the course of the official's duty or power and within the scope of his authority." Id. (citing Lindner v. Mollan, 677 A.2d 1194, 1199 (Pa. 1996)).

> The determination of whether a particular individual qualifies as a "high-ranking public official" must be determined on a case-by-case basis. There is no line of demarcation which separates offices which are protected by absolute immunity from those which are not. Factors which the court may consider include: the nature of the public officer's duties, the importance of his office and whether or not he has policy-making functions.

Feldman v. Hoffman, 107 A.3d 821, 827 (Pa. Commw. Ct. 2014) (citing Montgomery v. City of Phila., 140 A.3d 100, 105 (Pa. 1958); Lindner, 677 A.2d at 1198) (internal citations omitted).

"[G]iven the factually intensive nature of this inquiry, it is generally not appropriate to determine immunity on a motion to dismiss." Williams v. Lawrence Cnty. Career & Tech. Ctr.,

No. 17-620, 2017 WL 4842549, at *12 (W.D. Pa. Oct. 26, 2017).  Because the Court is unable to determine whether Bashour, Matis and Brosky are "high public officials" in their RTSA roles on this undeveloped record, the Court will not dismiss Plaintiff's tort claims against them at this initial stage of this action.

With respect to Williams, the parties concede that he would be entitled to high public official immunity while carrying out his duties as township supervisor.  Because there are questions of fact as to whether Williams was acting within the scope of his authority as township supervisor relative to the alleged tortious conduct, however, the Court also declines to dismiss Plaintiff's tort claims against Williams on this basis.  Therefore, the Motion to Dismiss Counts VI, VIII and IX is denied on this basis.

### G.  Punitive Damages

Finally, Defendants argue that punitive damages are not available against municipalities or government employees in their official capacities, and therefore Plaintiff's claims for punitive damages against Redstone Township, the Redstone Township Board of Supervisors, the RTSA, and the individual defendants in their official capacities should be dismissed.  ECF No. 22 at 22. In response, Plaintiff waives any such claims for punitive damages.  ECF No. 30 at 21. Accordingly, the Court grants the Motion to Dismiss on this basis, and it dismisses Plaintiff's claim for punitive damages against Redstone Township, the Redstone Township Board of Supervisors, the RTSA, and the individual defendants in their official capacities.

## IV.   CONCLUSION

For the foregoing reasons, the Motion to Dismiss is granted in part and denied in part.  The Court dismisses the following:

1. Count I, to the extent it arises out of Plaintiff's statement addressing Matis about his falsely reporting on the usage of the RTSA upper apartments, as alleged at ECF No. 21 ¶¶ 35-36;

2. Count II (on consent);

3. Count III (on consent);

4. Count IV against Defendants RTSA, Redstone Township, Redstone Township Board of Supervisors, Brosky and Williams;

5. Counts VI, VIII and IX, to the extent those claims are asserted against Matis, Brosky, Bashour and Williams in their official capacities; and

6. Plaintiff's claim for punitive damages as to Redstone Township, the Redstone Township Board of Supervisors, the RTSA, and the individual Defendants (Matis, Brosky, Bashour and Williams) in their official capacities.

"If a complaint is vulnerable to Rule 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." Phillips, 515 F.3d at 236. Therefore, as to any claims Plaintiff did not chose to withdraw, she will be permitted to amend her Complaint, as appropriate, within 21 days.

An appropriate Order follows. Pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, if any party wishes to appeal from this Order he or she must do so within thirty (30)

days by filing a notice of appeal as provided in Rule 3, Fed. R. App. P., with the Clerk of Court,

United States District Court, 700 Grant Street, Room 3110, Pittsburgh, PA 15219.


DATED:  September 10, 2021                    BY THE COURT,

                                             ***/s/ Maureen P. Kelly***_____
                                             MAUREEN P. KELLY
                                             UNITED STATES MAGISTRATE JUDGE


cc: All counsel of record via CM/ECF.